We have four cases scheduled for oral argument this morning. Our first case is Lugus IP v. Volvo Car Corporation. I'd like to briefly address two points that I think the case is focusing on at this point. The first has to do with the district court's construction of the phrase when said child is not located in said child's safety seat. The district court in construing when did not adopt Lugus' position, did not adopt Volvo's. Let's assume that you're right and the district court was wrong about its construction of the word when. Isn't there still a problem for you with respect to the requirement that the Volvo seat automatically go into a fully contoured position to accommodate an adult, but it doesn't? There has to be some human intervention. That's separate from the when issue, I think. Correct. That's my second point, which I can jump to now for your honor. And that is there's a fundamental disagreement between the parties and even the district court in terms of how the Volvo seat operates. The district court in granting the summary judgment motion stated a user must manually press the Volvo seat bottom from the elevated child position into the stowed adult position. That's an A-70. That's an incorrect understanding of how the Volvo seat operates. Even Volvo in the markment admitted when you pull the lever, the seat bounces back a bit. That's A-384. The video in the Connolly Declaration, which is A-879, all shows... Do we have the video? I don't remember. I mean, there's pictures from the video. The video was submitted, I believe, several weeks ago.  Correct. It shows the seat. After the lever is pulled, the seat automatically flies down. The issue is what happens after it flies down? The court then focused on subsequent pushing and locking and only analyzed infringement from that position. The district court did not analyze infringement from the point at which the seat is in a retracted position. And those are the pictures you see in our brief. The seat comes down and then subsequently can be pushed back. So then the question is, as the seat is released and is in that retracted position, does that or does that not mean the claim limitations? When you're saying this is the picture, I guess it would be at 32 of your brief? That's prior to release, Your Honor. It goes 32 through 34. 34 will be the state in which the seat is after the automatic retraction but prior to the manual locking. The question is, the seat, as you see in 34, does that or does that not mean the claim limitations? I'm a little confused because I thought your main point was the claim construction was wrong, but now you're seemingly arguing that there's just a tribal issue at the back here. Two issues. One, the claim construction certainly is wrong. And that's my first issue with respect to the issue of when. Okay, so I'm not talking about the when. So you don't have a claim construction on the automatically returning to the fully adult? Both parties agree that automatically retracting, as the district court stated, meant some form of self-acting or self-regulated motion. So you agree, I take it then, that in order for Volvo to infringe, it has to, once you push the button, automatically return to the adult seat position? Not to the adult seat position as defined by Volvo. And that's, if you look at figure one, A78 of the patent, you see a deployed and undeployed state. We all agree then that whatever the claim limitation is, that that has to meet the claim limitations. We do not have the seat locked. We do not have the seat flush. We do not even have adult seat belts. Are you suggesting in figure one, when this is automatically returned to the adult seating position, that the back of the seat, which I think is what you're concentrating on, is not flush with the back of the frame? Correct. There seems to be, there was a discussion in the briefs with respect to figure 18 and whether or not the right side is flush versus the left side. And the fact that as that's retracting, it's coming back up against those child seat belts now that are between it and the back of the frame, and whether or not that seat will always be flush or not. If it's not always flush, then this seat wouldn't even be within the scope of the claims. So your argument is when the Volvo seat retracts to an intermediate position, that that intermediate position is a fully contoured adult seat? It's defined by the parties and the court, yes. I wouldn't call it intermediate, but in the retracted position, certainly. The question is, in terms of fully contoured adult seat, the definition that the parties have been using is, can it be used by an adult? And that's when the brief you saw where people were talking about can someone sit on it, can someone use the seat belts, etc., and the answer is yes. Well, someone, is there a difference between whether they could sit on it or whether they would sit on it? I mean, would you sit on it that way or wouldn't you wait to sit on it until it was fully pushed down? I think indicative of that question is there's nowhere in the Volvo owner's manuals that tell you not to sit on it, that provide a warning or provide you with any other type of notice not to use the seat in that position. Contrary to a child seat and to the child positions, tons of warnings. Don't use the child seat unless it's locked. With respect to the adult seat, no warnings whatsoever. So can it be used? Absolutely. Well, isn't it partially elevated at that point? As is the seat in Figure 1 of the patent, yes. Yes, when you retract the Volvo seat to an intermediate position, doesn't the intermediate position have it still in an elevated position? As shown on page 34 of our brief, there is a portion that can still be elevated, but I think that's, if you look at the claims and the actual claim language. Why would that be then something that an adult would sit on or use? The claim talks about, because it's still usable, it still can be used. The adult portion where the adult places his bottom or her bottom is exposed. You could use it, but is it a fully contoured adult seat? Claims don't require it to be a fully contoured seat, it requires it to be part. So the claim is having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat. If you require the second part of that claim to have full, complete retraction, you've rendered the first portion meaningless. And that's where I think we need to focus on, not lose sight of the actual claim language, part and portion, not lose sight of the fact that we have two different clauses here. We've certainly disputed whether they should all be part of the same means for clause, which we still maintain. But nevertheless, there are still two. And there is the intermediate, the retracted state of the seat. What was your argument on reading the claim, automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured seat? Still, the seat has to be fully contoured, right? The seat is. But you referred to the Volvo manual, it doesn't look like it's fully contoured. I have a fully contoured adult seat that's molded, etc. I have a child safety seat that's within it, and then I have a retraction. The issue is, what does retracting mean? What is that spring? How far is it pulling it down? Let's assume we don't agree with your view of the facts and the way the Volvo seat operates, and that when it retracts, it actually is in this intermediate position. How is that part of a fully contoured adult seat? The definition of a fully contoured adult seat is a seat that can be used by an adult. Well, that seems a little broad. That's what we're dealing with at the district court. Depending on the size of the adult, they could probably sit on the child seat. That clearly doesn't meet the definition. The definition of your claim, the way it's written, seems to suggest somehow you push a button or you do something, the child seat springs back into the adult seat. At the end of the day, this is part of the problem of having a markman that issues after a summary judgment is filed. Even with respect to the markman, I'm limited by the markman. In terms of what the judge did with a fully contoured adult seat, it can be used. To the extent Your Honor disagrees with that and wants to raise a new issue, that's certainly for Your Honors to do. I would just ask at that point that we be given an opportunity to respond. You're into your rebuttal time. I have nothing else, per se, at this point, unless you have any more questions. Okay. Mr. Moore? Good morning, and may it please the court. I'll start with the issue of do the Volvo seats automatically retract to form a fully contoured adult seat. Here, there's no dispute regarding how the products work. As the Volvo user manuals show, once the seat is put in a raised booster position for them to work, a user must pull the handle and then push it down. You can see that. Can you talk to me about the picture on page 34 of the blue brief? These are distilled from the video. I'm not sure the district court even looked at these, but at least on page 34, it looks like the seat is, after the button push or whatever, is down in the fully adult position. The video was shown to the district court. They did see it. They did have copies of it. Here, the key things with the video are, first, we don't even know that's a Volvo seat. We're not even sure that's admissible evidence because they can't identify where they got it from. They can't identify the chain of custody. Did you argue that below? We didn't really get into a motion to preclude it, so we didn't go that far. This video was admitted into evidence? It wasn't ruled one way or the other. It wasn't relied on by the court, but the court didn't rule one way or the other, and I think that's probably because we didn't make a formal motion to exclude it. We didn't because it doesn't matter. If you look at page 34 of the blue brief, where they show that video, that same picture is on page 36 of the blue brief. On page 36 of the blue brief, Lugas admits that that position extends above the adult seat. So even in their video, when somebody's pulled the lever and it goes to that position, they admit it extends above so that intermediate booster cushion is raised and the sides are lower. They also admit several places, like page 12 of their opening brief. That position on page 36, if you look on the right-hand side, is that the front part of the seat or the back? It's switched perspectives from 34. Look at page 36. On the right-hand side of the seat, is that the front or the back part of the seat? On page 36, that would be the front part of the seat. And what's important there is it's both raised and extended, as they admit, and it's unlocked. And they admit that on page 12 of their brief. They admit in their complaint at page A110 that it's got to be further pushed down. There's no dispute about that, even if you look at the Conley Declaration, which describes the video. They talk about after the person pulls the lever, they qualify. It goes to an initial retracted seat. They admit it doesn't have to go all the way down. It's got to be further pushed down. And that's fundamental. We heard that the Volvo user manuals don't include warnings. That's not true. If you look at the joint appendix here, we've got A624, A629, and A619. Right next to the instructions that show a user must pull the handle and push it down, there is a warning to the right that says follow all instructions. And here the instructions are the two instructions of pulling the lever and pushing the seat down. So for all those reasons, it does not form a fully contoured adult seat. There also has been no construction by the district court. Your opponent's arguing that an adult could sit on that anyway, that that is an adult seat. Why is that not possible? First of all, if an adult sits on it, you don't know if it will lock or not lock. It's got a 53-pound force requirement to lock it. And so if an adult sits on it, that's not automatic. If an adult has to sit on it to stow it, that's just like the hand pushing it down. It's manual, not automatic. Opposites. And in fact, if an adult has to sit on it to lock it, that makes the point. It's not a fully contoured adult seat because it still needs that manual pressure. And even the 926 patent itself describes, and we talk about this in our red brief at page 33, that downward pressure like that is manual. Apart from locking it, can an adult sit on that? And is that a fully contoured adult seat? No, it wouldn't be safe. As the warning said, you haven't followed the instructions to stow or lock the seat. It would, one, be extended above the sides of the seat so it wouldn't be fully contoured, and it wouldn't be safe because it wouldn't be secure. Mr. Morton, one question. We were talking a little bit earlier about the drawings at 32, 34, 36. Well, 32 through 34 and 36. And we also have the Volvo manual in the appendix. Was there discussion at the district court as to the differences between what's shown in the Volvo manual and the drawings from the video? No. What was the discussion about? Everyone agrees the Volvo manual shows the Volvo seat, right? There's no question about that. I was just trying to make sure I understand. What was discussed about what is actually shown in terms of whose seat is in the video? The only thing the district court said is he can't even be sure this is a seat because it's been disassembled. It's been taken out. You don't know who it's from and you don't know how it's been changed. It's obviously been disassembled from the seat. Was there any discussion when the plaintiff presented the seat? I'm sorry, presented the video? I'll ask Mr. Fries about that, but I just was curious. What discussion took place when this video was offered? The court's reaction to it was I can't even tell that's even a seat. That was the court's one-line reaction to the video. But our position is even if the video is admissible and allowed, it cannot possibly meet the definitions of the claim and no reasonable jury could conclude it meets the claim because it's an extended, unlocked intermediate booster cushion. If it's extended, it's not fully contoured. Even Lugas admits at their opening brief at page 28, it's got to be all the way back, all the way into a fully contoured adult seat. And if it's elevated, it's not. And if it's unlocked, it's not. What about their argument about their embodiment and that in their embodiment, somebody might have to sit in it to push the back of the seat all the way back? There's no support for that at all. In fact, that would be contrary to what this patent describes, being automatically retracted into a fully contoured adult seat. And it would be contrary to the purpose of the invention. The whole purpose of the invention here was to not distract the operators of the bus or the operators of the mass transfer vehicle so when a child left the seat, the seat would automatically go to a position that could be used safely by an adult. Sorry, I just wanted to clarify that because it seems a little fuzzy to me. I mean, use safely means when they sit in it, it seems like even if it didn't go all the way back, as they say, the seat belts or something may be tangled or something. If they sit in it, doesn't that push it all the way back? And how would that actually differ from the bottom of your seat where if you sit in it, it would go down? Because in their seat, when it fully retracts, it is ready to be used by a normal adult in a safe capacity. In this seat, when it's still elevated and when it's in an unlocked position, we know as the instructions and warnings in the user's manual say, that's not an adult position. And just the admission that a human would have to sit on it to maybe lock it proves the point that it would require manual pressure to put it down. But isn't that automatic, just sitting on it? No, that's manual. Just like the hand applies the pressure, somebody sitting on it would be applying the pressure. It would be manually pushing the seat down to lock it into place. It would require human intervention. The parties agreed on the construction of automatically. It's a self-acting, self-regulating mechanism. That takes us to the use of the construction of the word when, right? When the, that the district court arrived at. What's your view on that? When the court was just deciding between two competing plain meaning proposals. And in this case, the plain meaning, as the district court relied on, the district court went with ours and cited Webster's Dictionary, consistent with earlier court precedent on that same term, at page 40 of the red brief. With that, you've got the claim language really compels this conclusion. Because it says the seat automatically retracts when a child is not located in the seat. When is used to qualify automatically retracting? Even if you look at the parties agreed on definition of automatically, it's a self-acting, self-regulating mechanism that performs a required act at a predetermined point. That was agreed on by the parties. The predetermined point here is when the child is not located in the seat. And the prosecution history is very important here. Because claims 1 and 2 of the patent were originally rejected. But claim 9 was allowed. And claim 9 only added the limitation when a child is not located in the seat. And so when faced with the Stigson prior art, the court realized that 1 and 2 were invalid, but said claim 9 would be allowable if rewritten in an independent form. And that's what the applicant did in that situation. But since Stigson shows something where somebody presses a button and pushes it down, that means Volvo's construction must be correct. Because it's the only one that would make Stigson different. Because if Stigson doesn't show a seat that automatically retracts at the instant, or at the moment that somebody presses the button. But if it meant, as Lugas proposes, at any time during which a child is not in the seat, Stigson would show that because the child can get out of the seat, somebody can press the button and push it down. So claim 9 wouldn't have been any different than claims 1 and 2. You don't need to win on that argument though, do you? I mean, if we agree with you on it automatically retracting to form a fully contoured adult seat, that's enough to support the summary judgment in your favor. Correct. We can win on either basis. So let me just ask you again, going back to the pictures from the video, specifically at 33 and 34, I assume, Samuel, you've seen the video, right? Correct. Okay. Looking at 33 and then looking at 34, what, if any, and I realize there's some dispute about this video, but looking at 33 and 34, what had to be done, if anything, by way of, we'll say, human intervention or non-automatic intervention to get the seat from where it is in 33 to where it is in the picture on 34? The user, and we don't think that's critical to our position, because we think even from the position it did in 34, it requires manual pressure to push it down. You're saying in 34 it should still be pushed down further? Oh, it must be. They admit on page 36 that it's elevated and unlocked. If you recall, what, if anything, because I confess I haven't looked at the video, I've just seen the pictures and the briefs. So what, if anything, had to be done by way of non-automatic intervention, by way of human intervention, to get from where we are in 33 to where we are in 34? The user had to pull the handle. If you watch the video, too, it's fairly interesting, because the person pulls the handle very hard and pulls it forward pretty hard. You're not even sure, you wonder why the seat's removed, if they could have done that in the space of a car, because the person pulled the seat forward very aggressively. So you're saying that if I look at this picture in 33, I see an arm reaching towards part of the seat, and you're saying that what happened next was, which I don't see here, to get to 34 was that hand and arm pulled the seat. Correct. When they pulled the handle, they also pulled the seat to make it one force. But again, we could debate that. No, I understand. I was just trying to understand this video. Just one point I would like to address, because it was raised in the reply brief for the first time, is in the reply brief on page 2, Lucas makes the point that they never got discovery on infringement. That's simply not correct. First, they're raising it in the reply for the first time, so it's waived. But second, if you read the District Court's summary judgment order at page 865, Lucas conceded it had all the discovery it needed for model years 2005 through 2013. If you look at the declaration from Mr. Fweese, which was at A886, he admits they had the discovery from 2005 to 2013, and that time frame from the cars makes sense, because the case was filed in 2012. And so at that point, going six years forward, took you to 2005, and the cases that were in existence at that time were 2012 and 2013. The only discovery issue that was even raised below was some discovery regarding 2014 and 2015 models. And there, they submitted a declaration, but the court found they did not comply with the Third Circuit requirements under Rule 56. And those are laid out in the Dowling case versus the City of Philadelphia at 855. Fed second, 136. Pinpoint site, 139. Third Circuit, 1988. And you can also see it in the District Court's order, the summary judgment order at page A64 and A65, where it said they didn't comply with these requirements. And there's a reason that they couldn't comply with those requirements, because as the Isaacson Declaration shows on page A794, the seats operated in 2014 and 2015 the same way they did in all the years before, and in any event, that discovery was publicly available. Okay. All right. Thank you. Thank you. Your Honor. Please, I'll restore you back to seven minutes. Okay. Thank you very much, Your Honor. With respect to the video and the seat shown in the video, Your Honor will see the video. It's a pulling of the latch, removing of the hand, so it does not get essentially smacked by the seat, which is spring-loaded to come down. Volvo is never denied. Basically, Lugas is the only one with evidence with respect to the internals of the Volvo seat. There's apparently some difference of opinion as to the origin of this video. Where did Lugas obtain it, and what did Lugas say to the district court when it put it into the record for purposes of the summary judgment proceedings? So what we used was, it's A879 and A80. We realized that the provenance of the seat was going to be an issue. We're simply, we're buying a seat that's been on the secondary market. Could it have been modified? Certainly. We don't know. So what Lugas' president, Mr. Connolly, did was not only analyze the seat, take the video, but then go to the Volvo dealership and work with the Volvo seat at a Volvo dealership. We could not buy a car. Nor could we rely upon a seat in the car and then deal with spoliation issues, etc. We did ask for a seat during discovery. We didn't get one. How the Volvo seat works on appeal should not be an issue. When you say it was purchased from a vendor, who was the vendor? I don't know offhand, Your Honor. I mean, was it a second-hand car dealer? Was it someone related to Volvo? I don't know, Your Honor, which is why we had Mr. Connolly go to the dealership, look at the XC90, and basically confirm that what's shown in the video is essentially representative of how the seat actually works as installed in the Volvo XC90 car. At the end of the day, there was no objection or no argument as to the video itself. Correct, Your Honor, and it was not addressed by the district court, nor did the district court make any mention whatsoever on non-infringement, whether the seat in a retracted state prior to lock-in did or did not meet the claims as properly interpreted. So what the district court was told about the video and what's shown is basically what's in the declaration at 879 through 881? The district court certainly saw the video. Saw the video multiple times during the Markman hearing as well as when it was presented as part of the summary judgment motion. That's where I get to, which I believe was the district court's confusion, where the district court believed at 870 where the district court says the user must manually press the Volvo seat button from the elevated child position into the stowed adult position. The district court believed that manual intervention was needed for that entire motion all the way down into a locked position, which is not the case. There is automatic retraction after pushing of the button. So when you push the button and it retracts, are you saying that it goes all the way down to its final position? There's no intermediate step? There's a spring that takes it down into a retracted position where it sits as a page. But then at that point, it's still in an elevated position or somewhat of an elevated position, right? Correct, Your Honor. So to get it down flush, you have to push down on it? If you want it completely flush to sit on, yes, Your Honor. So if you're a big adult and you want to sit without your legs being elevated, you'd have to push it down? Or sit on it. That would be a two-step process, right? You'd have to retract it, and then you'd have to push down in order to have a flush seat. Contrary, if I was a 50-pound adult and didn't weigh enough to meet the threshold to lock the seat, I would be sitting on it in an unlocked position. So if the adult just sits on it and uses the weight to lock it, isn't that still the completion of an additional step to get the seat flushed? Yes, but it's a comprising claim. It's not a method claim, first of all. It's an apparatus. But wouldn't that kind of show that it's not at a fully adult configuration at that point? You have to do something else. Something else has to happen in order to get the seat flushed down so that an adult can sit on it. I don't believe there's any debate that an adult can sit on the seat as retracted. What we hear in terms of why they can't is safe, insecure, and other factual issues that have never been raised before. They were not addressed in the district court and are just purely attorney arguments. If I'm an adult over 100 pounds and I sit on the seat, it will click and lock. If I'm an adult, if I put my child on it who's 50 pounds, it's not going to lock. I can still use the seat, but the portion that's underneath their thighs won't be locked. It's still usable, and there's nothing in the Volvo manual that tells you not to use it. I guess the question is it hasn't automatically retracted to that adult position. Something else has to happen. This gets back to the definition that's applied to the fully contoured adult seat, and the district court applied it can be used, which is why we get into the safe, secure, etc. that we hear from Volvo, the manner of operation of the seat, not to a specific point. That's where I get back to Figure 1 of the patent that also shows retraction. Whether or not Figure 1 gets read out, because Figure 1 may not retract every time. If I have a seat that retracts sometimes but not other times, does that preclude infringement totally? Or just means that I have infringement when the seat's used by a 50-pound individual or when I have someone who enjoys sitting on it in that state as opposed to someone who doesn't. So far we've been talking about the retraction and the height of the seat. What about the back of the seat and the protruding side? Figure 1, that does show a protruding side, which would indicate I don't have to have a completely flushed seat to have a fully contoured adult seat. That would certainly support Lugas' position with respect to that portion of the claim. And I can briefly, with respect to May only, if the court would like to hear about only, otherwise I am... We still have 39 seconds left. Okay, with respect to only, I just wanted to point out that column 3, lines 60 through 66, in terms of how the patent describes the retraction, it describes a pressure being applied to the seat. The source of the pressure is not limited to that of a child. The way the district court read the claim to require that only the child can provide the source of the pressure would preclude me from pulling the seat down and letting it go. If a seat automatically retracts simply because I let it go halfway through the process under the district court, that would not be within the scope of the claims. And that clearly reads out the majority of the patent. It cannot be correct. Okay, thank you.